```
            IN THE UNITED STATES DISTRICT COURT FOR
              THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA    :
                            :
        v.                  :
                            : No. 4:18-CR-374
LAMONT PAYNE,               :
                            :(Magistrate Judge Arbuckle)
              Defendant.    :
                            : Judge Brann
```

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR REVIEW AND REVOCATION OF PRE-TRIAL DETENTION ORDER**

Defendant Lamont Payne, by and through his undersigned counsel, hereby submits this Brief in support of his Motion for Review and Revocation of the pre-trial detention Order.

**FACTUAL BACKGROUND AND PROCEEDINGS BELOW**

In 1998, then-20 year old Lamont Payne was sentenced to approximately 22 years for armed robbery in the District of Columbia.

On October 8, 2018, while an inmate serving that sentence at USP Allenwood, Mr. Payne and another individual Floyd Long, were charged with Possession of Contraband in Prison, pursuant to 18 U.S.C. § 1791.  Notably, the item possessed, - a handmade sharpened piece of plastic – was not used in any way.

On November 26, 2018, an initial appearance and arraignment was held before Magistrate Judge Arbuckle.

Given that Mr. Payne was still serving his 1997 sentence, Mr. Payne did not contest detention at that juncture, but reserved the right to challenge it. The Court ordered detention based solely on the fact that Mr. Payne was already serving a federal sentence. No other factors were identified in favor of detention. (Doc. 16).

On January 29, 2020, Mr. Payne entered a guilty plea before the Court to a single count of Possession of Contraband. Among other things, the negotiated plea agreement called for a range of six months below the bottom of the guideline to the bottom of the guideline range. A pre-sentence report ("PSR") was ordered and prepared. At the moment, without any objections, the present advisory guidelines are 12 to 18 months. (PSR ¶58). Objections to the PSR are forthcoming. Mr. Payne is awaiting sentencing.

Earlier this week, on April 21, 2020, Mr. Payne completed his 1997 federal D.C. sentence. He was released from BOP custody (from FCI Pollock, Louisiana) and is being detained only on the original detention order in this case. Mr. Payne is currently confined at the St. Martin Parish Correctional Center in St. Martinsville, Louisiana.

On April 24, 2020, Mr. Payne filed a motion for review and revocation of the detention order. Accordingly, this Brief is being submitted in support of that Motion.

**ARGUMENT**

**MR. PAYNE SHOULD BE RELEASED BASED UPON COMPELLING REASONS INCLUDING, BUT NOT LIMITED TO, HIS CHANGED CIRCUMSTANCES – INCLUDING HIS RELEASE FROM BOP CUSTODY, LACK OF FLIGHT AND DANGER TO PUBLIC AND THE NEW COVID-19 PUBLIC HEALTH CONCERNS.**

The Bail Reform Act contains a presumption of release on personal recognizance without any conditions.  See 18 U.S.C. § 3142(b) ("the judicial *shall order* the pretrial release of the person on personal recognizance . . . *unless* the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.") (emphasis added).  Liberty is the norm and "detention prior to trial or without trials is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).  In Salerno, the Supreme Court upheld the Bail Reform Act, 18 U.S.C. § 3142, but held that the Act "carefully limits the circumstances under which detention may be sought to the most serious crimes."  Id. at 747.

The only permissible bases for detaining a defendant are the enumerated factors set forth in 18 U.S.C. § 3142(f).  It is illegal to detain a defendant unless the Government establishes one of the factors listed in § 3142(f).  See United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986).

A court may release a defendant pending sentencing provided that the court finds by clear and convincing evidence that the

3

person is not likely to flee or pose a danger to the community. See 18 U.S.C. § 3143(a)(1).

Furthermore, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

Applying these standards, Mr. Payne should be released pending sentencing.

At the outset, it bears highlighting that Mr. Payne is detained in violation of the law because none of the seven § 3142(f) factors have ever been satisfied.  The detention order makes clear that the only reason Mr. Payne was detained at that time was because he was already serving a sentence.  Def. Ex. A (ECF Doc. 16).  None of the other § 3142(f) factors were cited to or found by the Court.  Therefore, since Mr. Payne is no longer serving a sentence and none of those factors have been satisfied, on this basis alone he should not be detained and immediately released.  See Himler, 797 F.2d 160; United States v. Singleton, 182 F.3d 7, 9 (D.C. Cir. 1999) (unless statutory threshold set out in § 3142(f) is met, "detention is not an option."); United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992) ("detention can be

4

ordered, therefore, only in a case that involves one of the . . . circumstances listed in (f).").

Second, the human race is facing a global pandemic caused by a strain of the coronavirus, COVID-19.  See WHO Characterizes COVID-19 as a Pandemic, World Health Organization (March 11, 2020), https://who.int.  The United States has been hit particularly hard.  There are more than 880,000 reported cases, with over 50,000 deaths.  See Johns Hopkins University, Coranvirus Resource Center, (Apr. 24, 2020), www.coronavirus.jhu.edu.  Pennsylvania has approximately 40,000 cases, with over 1,700 deaths.  Id.  Louisiana has over 26,000 reported cases and over 1,600 deaths.  Id.  The Centers for Disease Control ("CDC") has issued guidelines to take immediate preventive actions, including avoiding crowded areas, social distancing measures, avoiding non-essential travel, and staying home as much as possible.  See www.cdc.gov.

On March 6, 2020, Governor Tom Wolf signed an emergency disaster declaration, with the most recent proclamation declaring a state of emergency that will close all "non-essential businesses" in the state.  See www.governor.pa.gov/news.

The coronavirus has affected state and federal judiciary operations throughout the Commonwealth.  The Pennsylvania Supreme Court has ordered all Pennsylvania courts closed except for essential functions.  See In re: General Statewide Judicial

5

Emergency, Orders Nos. 531, 532, March 18, 2020.  Standing Orders signed by Chief Conner have been issued recognizing the significant health concerns caused by COVID-19 and disruption of normal courthouse operations in the Middle District of Pennsylvania.  The Court also recognized that the CDC, as well as state health authorities advised that precautions be taken to avoid exposure to the virus and prevent its spread.

Prisons and jails have "long been known to be associated with high transmission probabilities of infectious diseases." Letter from Patricia Davidson, Dean, Johns Hopkins School of Nursing, et al., to Hon. Larry Hogan, Governor of Maryland (March 25, 2020), https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf (co-signed by over 200 faculty members of Johns Hopkins Bloomberg School of Public Health, School of Nursing and School of Medicine).  Prisons and jails "contain high concentration of people in close proximity and are breeding grounds for uncontrolled transmission [of infection]."  Letter from Dr. Sandro Galea, Dean, Boston University School of Public Health, et al., to President Trump 1 (March 27, 2020), https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf (co-signed by numerous public health officials from leading medical and public health institutions).  "Prisons are petri

dishes for contagious respiratory illnesses." Letters to the Editor: A Prison Doctor's Stark Warning On Coronavirus, Jails and Prisons, Los Angeles Times (March 20, 2020), at https://www.latimes.com/califronia/story/2020-03020/prison-doctors-stark-warning-on-coronavirus-and-incarceration. Conditions of pre-trial confinement create the ideal environment for the transmission of contagious disease. Joseph A. Bick, Infection Control in Jails and Prisons, Clinical Infectious Diseases 45(8), (2007). Prisons and jails are especially vulnerable to COVID-19 outbreaks. Nicole Wetsman, Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge, March 7, 2020. Incarcerated individuals have poorer health than the general population, and even at the best of times, medical care is limited. See Laura M. Maruschak et al., Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12, NCJ 248491 (2015), U.S. Dep't Justice, Bureau of Justice Statistics, at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

In consideration of the unparalleled throes of this public health crisis, the Court should consider Mr. Payne's release. As the PSR notes, he does suffer from asthma and other ailments. PSR ¶ 47. As a result, Mr. Payne's respiratory condition, combined with the surroundings of his confinement, movement in and out of custody, create the ideal environment for contracting

COVID-19.  His asthma status alone places him at higher risk of death if he contracted the virus.

Finally, Mr. Payne is not a flight risk or a danger to the community and otherwise meets the criteria for release under §§ 3142 and 3143.

Mr. Payne is 43 years old.  He has spent the last 22 years in federal prison.  He has spent more of his life in federal prison that he has on the streets of Washington D.C.  Mr. Payne has only a junior high school education and is legally disabled.  He is learning-impaired with a full-scale IQ of 61, and until his incarceration, was receiving Social Security Income due to that disability.  (PSR ¶¶ 51, 53)

Mr. Payne was born and raised in the District of Columbia and has significant and lifetime ties to the D.C. area, including his mother Celeste Payne, his father Charles Clock, paternal grandmother, Elizabeth Clock and one surviving sibling, Antonio Payne.  All of his family remains supportive of him.  His mother, Celeste has worked for the federal government (Government Publishing Office) for 37 years.  She has agreed to be Mr. Payne's third-party custodian.  If released, Mr. Payne would reside with his grandmother Elizabeth Clock.

Furthermore, upon Mr. Payne's release to the street, he is already ordered to report to the D.C. probation officer for five years of supervised release as part of his prior sentence.  If that is not enough, his mother, a federal employee for 37 years, will act as Mr. Payne's third-party custodian.

The Court should further consider the fact that pursuant to Mr. Payne's plea agreement, his current guideline sentence, before any objections to the PSR and any variances, is 12 to 18 months.  The plea agreement includes contemplation of a six month sentence below the bottom of the 12 month guidelines, or 6 months.  Thus, home detention and/or electronic monitoring are within the realm of sentencing alternatives.

Finally, the treatment of a very real human being is at stake here.  That individual, Lamont Payne, who possesses an IQ of 61, is legally disabled, has been incarcerated for the past 22 years.  Mr. Payne is beloved by his family, yet because of their financial limitations and Mr. Payne's locations of confinement, he has not seen family, including his dearly loved mother, for over a decade.

Mr. Payne's continued detention, under these extraordinary circumstances, is legally and morally unnecessary.  The Court should order his release.

## CONCLUSION

Accordingly, for the foregoing reasons, it is respectfully requested that the Court grant a hearing, telephonic or in person on Mr. Payne's Motion for Review and Revocation of the Detention Order and release him upon any of these conditions and such other conditions as the Court deems appropriate.


Dated:    April 24, 2020

                                MIELE & RYMSZA, P.C.

                                By:   s/Edward J. Rymsza
                                       Edward J. Rymsza, Esq.
                                       Pa. I.D. No. 82911
                                       Attorney for Defendant
                                       125 East Third Street
                                       Williamsport, PA  17701
                                       (570) 322-2113
                                       (570) 322-8813 (facsimile)
                                       Rymsza@comcast.net

**CERTIFICATE OF SERVICE**

I, Edward J. Rymsza, Esq., hereby certify that on this 24th day of April 2020, I served the foregoing Brief in Support of Motion for Review and Revocation of Pre-trial Detention Order upon Alisan Martin, Esq. by electronic mail.

Dated:   April 24, 2020

                       MIELE & RYMSZA, P.C.

                       By:   s/Edward J. Rymsza
                              Edward J. Rymsza, Esq.
                              Pa. I.D. No. 82911
                              Attorney for Defendant
                              125 East Third Street
                              Williamsport, PA  17701
                              (570) 322-2113
                              (570) 322-8813 (facsimile)
                              Rymsza@comcast.net